**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PREMNATH KARRE,  :

                             :      Case No. 2:26-cv-06421-WJM-CF

              Plaintiff,  :

      v.                        :      **Motion Date: August 17, 2026**

                             :

E*TRADE SECURITIES LLC; MORGAN  :
STANLEY;  BANK OF AMERICA, N.A.;  :
JOHN DOES 1-10; and ABC BUSINESS  :
ENTITIES 1-10,  :

                             :

            Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT</u>**

Philip A. Goldstein, Esq.
Shan P. Massand, Esq.
McGuireWoods LLP
1251 Avenue of the Americas, 20th Fl.
New York, NY 10020-1104
Telephone: (212) 548-2100
pagoldstein@mcguirewoods.com
smassand@mcguirewoods.com

*Attorneys for Defendant Bank of America, N.A.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS .....................................................................................2

LEGAL STANDARD.............................................................................................3

ARGUMENT .........................................................................................................4

I.     Plaintiff's Common Law Claims Are Preempted by UCC Article 4A. .........4

II.    Plaintiff Fails to State a Claim for Negligence Because BANA Owed No Duty to Non-Customer Plaintiff. ...................................................................8

III.   Plaintiff's Claims Are Inconsistent with New Jersey's Adverse Claims Statute (N.J.S.A. § 17:9A-223)....................................................................12

IV.   Plaintiff Fails to State a Claim for Conversion. ..........................................13

CONCLUSION....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADS Assocs. Group, Inc. v. Oritani Sav. Bank,*
219 N.J. 496 (2014) ................................................................................5, 8

*In re Agape Litig.,*
681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...............................................................10

*Armenian Missionary Ass'n of Am., Inc. v. TD Bank, N.A.,*
No. 15-CV-03328-SDW-SCM, 2015 WL 5310765 (D.N.J. Sep. 11,
2015) ......................................................................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................................4

*Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A.,*
909 F. Supp. 948 (D.N.J. 1995)....................................................................6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................4

*Bondi v. Citigroup, Inc.,*
423 N.J. Super. 377 (App. Div. 2011)..............................................................13

*Brunson v. Affinity Fed. Credit Union,*
199 N.J. 381 (2009) ..................................................................................8

*City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co.,*
166 N.J. 49 (2001) .................................................................................8, 9

*Conder v. Union Planters Bank, N.A.,*
384 F.3d 397 (7th Cir. 2004) .......................................................................10

*DeFazio v. Wells Fargo Bank, N.A.,*
No. 20-375 (SRC), 2020 WL 1888252 (D.N.J. Apr. 16, 2020) .............6, 7, 9, 15

*Eisenberg v. Wachovia Bank, N.A.,*
301 F.3d 220 (4th Cir. 2002) ....................................................................9, 11

*Essgeekay Corp. v. TD Bank, N.A.*,
  2018 U.S. Dist. LEXIS 214691 (D.N.J. Dec. 19, 2018)........................................5

*First Atl. Fed. Credit Union v. Perez*,
  391 N.J. Super. 419 (App. Div. 2007)............................................................1, 6

*First Nat'l Bank v. North Jersey Tr. Co.*,
  18 N.J. Misc. 449 (1940) .................................................................................14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ..............................................................................4

*Globe Motor Car Co. v. First Fid. Bank, N.A.*,
  273 N.J. Super. 388 (Law Div. 1993)..................................................................9

*Harborview Cap. Partners, LLC v. Cross River Bank*,
  600 F. Supp. 3d 485 (D.N.J. 2022)......................................................................5

*Hudson v. Valcorp, Inc.*,
  No. CIV. A. 88-2383, 1990 WL 69173 (D.N.J. May 22, 1990).........................12

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ...............................................................................9

*Ludlow Essex Partners LLC v. Wells Fargo Bank, N.A.*,
  No. 17CV2042 (DLC), 2017 WL 2963488 (S.D.N.Y. July 11,
  2017) ................................................................................................................11

*Meisels v. Fox Rothschild LLP*,
  240 N.J. 286 (2020) ...................................................................................14, 15

*Merrick Bank Corp. v. Valley Nat'l Bank*,
  Civ. A. No. 13-7756, 2017 WL 5951583 (D.N.J. Nov. 30, 2017) .....................14

*Morrow v. Balaski*,
  719 F.3d 160 (3d Cir. 2013) ...............................................................................4

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997) ...............................................................................4

*New Jersey Bank, N.A. v. Bradford Secs. Ops., Inc.*,
  690 F.2d 339 (3d Cir. 1982) ...............................................................................6

iii

*Obataiye v. Lanigan*,
No. CV 14-5462 (FLW)(TJB), 2018 WL 3019887 (D.N.J. June 18, 2018) ...............................................................................................4

*OWAL, Inc. v. Caregility Corp.*,
Civ. A. 3:21-cv-13407, 2022 WL 890182 (D.N.J. Mar. 25, 2022)....................14

*Palakovic v. Wetzel*,
854 F.3d 209 (3d Cir. 2017) ...........................................................................4

*Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank*,
390 N.J. Super. 199 (App. Div. 2007)..............................................................6

*Pub. Serv. Co. of Okla. v. A Plus, Inc.*,
No. CIV-10-651-D, 2011 WL 3329181 (W.D. Okla. Aug. 2, 2011) ................10

*Remtek Servs. v. Wells Fargo Bank, N.A.*,
2020 U.S. Dist. LEXIS 7678 (D.N.J. Jan. 16, 2020)........................................5

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010) ...........................................................................4

*Tang, LLC v. MAJ Servs., LLC*,
No. 13A686949, 2017 WL 4869517 (Dist. Ct. Nev. Sep. 19, 2017) ................10

*Towne Auto Sales, LLC v. Tobsal Corp.*,
No. 1:16-cv-02739, 2017 WL 5467012 (N.D. Ohio Nov. 14, 2017)................10

*Townsend v. Pierre*,
221 N.J. 36 (2015) ..........................................................................................8

*VIP Mortg. Corp. v. Bank of Am., N.A.*,
769 F. Supp. 2d 20 (D. Mass. 2011)...............................................................10

*Wang v. Allstate Ins. Co.*,
125 N.J. 2 (1991) ............................................................................................8

*Yahn & McDonnell, Inc. v. Farmers Bank of State of Del.*,
708 F.2d 104 (3d Cir. 1983) ...........................................................................6

**Statutes**

N.J.S.A. 12A:4A-404.........................................................................................7

N.J.S.A. § 12A:1-103(b) .................................................................................5

N.J.S.A. § 12A:4A-101 *et seq.* Article 4A .............................................................4

N.J.S.A. § 12A:4A-209 ...................................................................................7

N.J.S.A. § 12A:4A-211 ...................................................................................7

N.J.S.A. § 12A:4A-402 ...................................................................................7

N.J.S.A. § 17:9A-223 ..................................................................1, 12, 13, 14

Uniform Commercial Code.......................................................................6, 10

Uniform Commercial Code, N.J.S.A. § 12A:4A-101 *et seq.* Article 4A .1, 4, 5, 6, 7, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2, 3, 16

Defendant Bank of America, N.A. ("BANA"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Premnath Karre's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and states as follows:

## INTRODUCTION

Plaintiff, a Georgia resident, alleges that on December 26, 2024, two unauthorized wire transfers totaling $123,510 were executed from his E*TRADE brokerage account and routed to accounts held at BANA. Plaintiff is not a customer of BANA and has no contractual, fiduciary, or other relationship with BANA with respect to the accounts or transfers at issue. BANA is merely the beneficiary's bank—it received incoming wire transfers into accounts held by unknown third parties.

Plaintiff's claims against BANA fail as a matter of law for four reasons. *First*, Plaintiff's common law claims for negligence and conversion are preempted by Article 4A of the Uniform Commercial Code, N.J.S.A. § 12A:4A-101 *et seq*., which provides the exclusive framework governing rights and liabilities arising from wire transfers. *Second*, Plaintiff's negligence claim fails because BANA owed no duty of care to Plaintiff as a non-customer. It is well-settled law that banks do not owe a general duty of care to non-customers, and no exception applies here. *Third*, Plaintiff's claims are inconsistent with New Jersey's Adverse Claims Statute,

N.J.S.A. § 17:9A-223, which provides that a bank need not recognize an adverse claim to deposited funds absent a court order or indemnifying bond—neither of which Plaintiff obtained. *Fourth*, Plaintiff fails to state a claim for conversion because BANA never exercised independent dominion or control over any funds belonging to Plaintiff.

For these reasons and as explained below, Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiff Premnath Karre is a resident of Georgia who maintained a brokerage account with E*TRADE Securities LLC ("E*TRADE"). *See* Compl. ¶¶ 5, 14. Plaintiff is not a BANA customer and has no contractual, fiduciary, or other relationship with BANA with respect to the accounts or transfers at issue.

According to the Complaint, on December 26, 2024, two unauthorized wire transfers were executed from Plaintiff's ETRADE account: one in the amount of $98,580 and another in the amount of $24,930, totaling $123,510. *See* Compl. ¶¶ 16–18. Plaintiff alleges that ETRADE and/or Morgan Stanley later informed him that the transfers were routed through Bank of America accounts within the United States. *See id.* ¶ 27. Plaintiff further alleges, on information and belief, that BANA received and processed the proceeds of the transfers into accounts maintained or serviced by BANA. *See id.* ¶ 55.

2

Plaintiff alleges that E*TRADE refunded $23,501.52 to his account, leaving $100,008.48 unrecovered. *See* Compl. ¶ 24. Plaintiff does not allege that he has any customer relationship with BANA or that BANA had advance knowledge that the transfers were allegedly fraudulent; rather, his allegations against BANA concern BANA's alleged receipt and processing of funds routed into accounts maintained or serviced by BANA. *See id.* ¶¶ 55, 58.

Critically, Plaintiff does not allege that he obtained any court order, restraining order, or injunction directed at BANA or the accounts at issue. Nor does Plaintiff allege that he provided BANA with an indemnifying bond. Plaintiff simply alleges that funds were routed to BANA accounts and that BANA should have somehow prevented or remedied the fraud committed against him by unknown third parties.

Based on these allegations, Plaintiff asserts claims against BANA for negligence (Count Four) and conversion (Count Five). *See* Compl. ¶¶ 35-50.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In resolving a Rule 12(b)(6) motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to

3

relief." *Obataiye v. Lanigan*, No. CV 14-5462 (FLW)(TJB), 2018 WL 3019887, at *6 (D.N.J. June 18, 2018) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

"In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must accept all well-pleaded factual allegations in the complaint as true. *Palakovic v. Wetzel*, 854 F.3d 209, 219 (3d Cir. 2017). But the Court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010).

## ARGUMENT

### I.    Plaintiff's Common Law Claims Are Preempted by UCC Article 4A.

Plaintiff's claims for negligence and conversion arise from wire transfers and are therefore governed exclusively by Article 4A of the Uniform Commercial Code (the "UCC"), as codified in New Jersey at N.J.S.A. § 12A:4A-101 *et seq.* Article 4A

4

provides a comprehensive framework governing the rights, duties, and liabilities of parties involved in funds transfers, and its provisions expressly preempt common law claims that seek to impose liability inconsistent with its carefully crafted allocation of risk.

N.J.S.A. § 12A:1-103(b) provides that principles of common law and equity supplement the UCC's provisions but "may not be used to supplant its provisions, or the purposes and policies those provisions reflect." The New Jersey Supreme Court has emphatically confirmed this principle in the wire transfer context. In *ADS Assocs. Group, Inc. v. Oritani Sav. Bank*, 219 N.J. 496, 518-20 (2014), the Court held that recognition of common law claims in wire transfer disputes "would be precisely the type of resort to principles of law or equity outside of Article 4A that the Legislature expressly sought to avoid."

Federal courts in this District have uniformly applied this principle to dismiss common law claims arising from wire transfers. In *Harborview Capital Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 496 (D.N.J. 2022), the court held that common law claims were preempted by Article 4A where the claims arose from a wire transfer dispute. Similarly, in *Remtek Servs. v. Wells Fargo Bank, N.A.*, 2020 U.S. Dist. LEXIS 7678, at *7 (D.N.J. Jan. 16, 2020), the court held that Article 4A's provisions are "intended to be the exclusive means of determining the rights, duties and liabilities" of the parties in a funds transfer. *See also Essgeekay Corp. v. TD*

5

*Bank, N.A.*, 2018 U.S. Dist. LEXIS 214691, at *17 (D.N.J. Dec. 19, 2018) (holding that allowing common law claims would sidestep the "careful and delicate" loss allocation scheme of Article 4A).

These holdings are consistent with longstanding Third Circuit and District of New Jersey precedent. *See Yahn & McDonnell, Inc. v. Farmers Bank of State of Del.*, 708 F.2d 104, 113 (3d Cir. 1983) (common law action barred where the UCC provides a comprehensive remedy); *New Jersey Bank, N.A. v. Bradford Secs. Ops., Inc.*, 690 F.2d 339, 345 (3d Cir. 1982) (same); *Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A.*, 909 F. Supp. 948, 956 (D.N.J. 1995) ("Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common law cause of action."). New Jersey state courts have reached the same conclusion. *See Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank*, 390 N.J. Super. 199, 204 (App. Div. 2007) ("the UCC displaces the common-law where reliance on the common law would thwart the purposes of the UCC"); *First Atl. Fed. Credit Union v. Perez*, 391 N.J. Super. 419, 431 (App. Div. 2007) (quoting *Bank Polska*, 909 F. Supp. at 956).

In *DeFazio v. Wells Fargo Bank, N.A.*, No. 20-375 (SRC), 2020 WL 1888252, at *3 (D.N.J. Apr. 16, 2020), this Court addressed facts virtually identical to those presented here. The plaintiff in *DeFazio* alleged that Wells Fargo was negligent in: (i) allowing the beneficiary account receiving a wire transfer to be opened, (ii)

6

allowing the transfer of the wired funds out of the account, and (iii) failing to prevent further transfers out of the account after being put on notice of the fraud. As the court held, Article 4A "directly addresses the funds transfer actions on which Plaintiff's negligence claim is based" and dismissed the claims as preempted. *Id.* The court explained:

> With regard to transfers out of account, Section 404 establishes a bank's obligation to make funds available to a payment order beneficiary when the beneficiary bank accepts the order, requiring a bank to pay the amount of the order upon acceptance. N.J.S.A. 12A:4A-404. Article 4A directly addresses the funds transfer actions on which Plaintiff's negligence claim is based. Accordingly, it precludes Plaintiff's claim that Wells Fargo acted with negligence or gross negligence in accepting the funds Plaintiff erroneously transferred into the Wells Fargo Account, in transferring funds out of the Wells Fargo Account and in otherwise failing to prevent transfers from the Wells Fargo Account.

*DeFazio*, 2020 WL 1888252, at *3.

The same analysis applies here. Plaintiff's claims against BANA are based on BANA's receipt of wire transfers into its customers' accounts and BANA's alleged failure to freeze or return those funds. *See* Compl. ¶¶ 55, 58–60, 64–67. These are precisely the actions governed by Article 4A. Under N.J.S.A. § 12A:4A-209, a payment order is accepted by the beneficiary's bank when the beneficiary is paid or notified of credit. Under N.J.S.A. § 12A:4A-402, the originator is obligated to pay the receiving bank upon acceptance. And under N.J.S.A. § 12A:4A-211, a sender

7

cannot cancel a payment order after it has been accepted without the bank's agreement.

Allowing Plaintiff to circumvent this comprehensive statutory framework by asserting common law claims against BANA would be "precisely the type of resort to principles of law or equity outside of Article 4A that the Legislature expressly sought to avoid." *ADS Assocs.*, 219 N.J. at 511-12. Because Plaintiff's negligence and conversion claims both arise from the same wire transfer transactions governed by Article 4A, they are preempted and must be dismissed.

## II.     Plaintiff Fails to State a Claim for Negligence Because BANA Owed No Duty to Non-Customer Plaintiff.

Even if Plaintiff's negligence claim is not preempted by Article 4A—and it is—the claim independently fails because BANA owed no duty of care to Plaintiff as a non-customer.

To establish a cause of action for negligence, a plaintiff must prove: "(1) duty of care; (2) a breach of that duty; (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015). Whether a legal duty exists is a question of law to be decided by the court in the first instance. *Wang v. Allstate Ins. Co.*, 125 N.J. 2, 15 (1991). Here, BANA owed no duty to Plaintiff.

It is well-settled New Jersey law that "absent a special relationship, courts will typically bar claims of non-customers against banks." *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 400 (2009) (quoting *City Check Cashing, Inc. v. Mfrs. Hanover*

*Tr. Co.*, 166 N.J. 49, 60 (2001)). As the New Jersey Supreme Court explained in *City Check Cashing*, "absent a special relationship created by agreement, undertaking, or contract, that gives rise to a duty, the sole remedies available are those provided in the Code." *Id.* at 62.

Federal courts across the country have uniformly applied this principle. In *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225-26 (4th Cir. 2002), the court held that banks do not owe a duty of care to non-customers, and that extending such liability "would expose banks to unlimited liability for unforeseeable frauds." *Id.* at 226. *See also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) ("banks do not owe non-customers a duty to protect them from the intentional torts of their customers").

New Jersey courts have likewise confirmed that banks owe no duty to non-customers. *See Globe Motor Car Co. v. First Fid. Bank, N.A.*, 273 N.J. Super. 388, 395 (Law Div. 1993) ("Absent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor"); *DeFazio*, 2020 WL 1888252, at *4 ("absent a special relationship, courts will typically bar claims of non-customers against banks"); *Armenian Missionary Ass'n of Am., Inc. v. TD Bank, N.A.*, No. 15-CV-03328-SDW-SCM, 2015 WL 5310765, at *4 (D.N.J. Sep. 11, 2015) ("It is well settled New Jersey law that a bank does not owe a general duty of care to non-customers").

9

This rule has been applied with particular force in the wire transfer context—the precise situation presented here. Courts have consistently held that a beneficiary bank owes no duty to a non-customer who originated a wire transfer from a different bank. *See Towne Auto Sales, LLC v. Tobsal Corp.*, No. 1:16-cv-02739, 2017 WL 5467012 (N.D. Ohio Nov. 14, 2017) (dismissing negligence claim against BANA where non-customer wired funds to a BANA account belonging to a fraudster); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 26-27 (D. Mass. 2011) (refusing to carve out exception to the "now almost universal rule that banks do not owe a common law duty of care to third-party non-customers"); *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004) (banks owe no general duty of care to non-customers); *see also Tang, LLC v. MAJ Servs., LLC*, No. 13A686949, 2017 WL 4869517 (Dist. Ct. Nev. Sep. 19, 2017) (defendant bank "fulfilled its obligations under the Uniform Commercial Code and has no duty to a non-customer as a matter of law" by accepting a wire transfer from the plaintiff's bank to the beneficiary's account); *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 3329181, at *4-7 (W.D. Okla. Aug. 2, 2011) ("a bank does not have a duty to third-party non-customers, even if the bank customer engages in misconduct harmful to the non-customer"); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("banks do not owe non-customers a duty to shield them against intentional torts committed by bank customers"); *Ludlow Essex Partners LLC v.*

10

*Wells Fargo Bank, N.A.*, No. 17CV2042 (DLC), 2017 WL 2963488, at *2 (S.D.N.Y. July 11, 2017) (banks do not owe a duty of care to non-customers to prevent customers from opening accounts subsequently used in fraudulent schemes).

Here, Plaintiff does not allege that he is or ever has been a BANA customer, nor does he allege any contractual, fiduciary, or other special relationship between himself and BANA. *See* Compl. ¶¶ 5, 8, 14, 53–61. Plaintiff's sole alleged connection to BANA is that unauthorized wire transfers from Plaintiff's E*TRADE account were allegedly routed through Bank of America accounts within the United States and into accounts maintained or serviced by BANA, with the recipient account holders unidentified. *See id.* ¶¶ 27–28, 55. This is precisely the type of attenuated, non-contractual relationship that courts have held insufficient to give rise to a duty of care.

As the Fourth Circuit explained in *Eisenberg*, extending liability from banks to non-customers like Plaintiff "would expose banks to unlimited liability for unforeseeable frauds." *Eisenberg*, 301 F.3d at 226. The law does not impose such an open-ended obligation on beneficiary banks. Because BANA owed no duty to Plaintiff as a non-customer, Plaintiff cannot maintain a negligence claim against BANA and the claim must be dismissed.

11

**III.    Plaintiff's Claims Are Inconsistent with New Jersey's Adverse Claims Statute (N.J.S.A. § 17:9A-223).**

Plaintiff's claims against BANA are also expressly inconsistent with N.J.S.A. § 17:9A-223, New Jersey's Adverse Claims Statute. Under this statute, notice of an adverse claim to the deposit of a bank's customer "shall not be effectual to cause the banking institution to recognize the adverse claimant" unless the claimant either: (1) obtains a restraining order or injunction with notice to the depositor; or (2) provides the bank with a bond, backed by acceptable sureties, indemnifying the bank "against any liability, loss, damage, costs and expenses on account of the payment of the adverse claim."

The purpose of adverse claims statutes, like New Jersey's, is to protect banks against lawsuits like this one. Without an adverse claims statute, if a third-party makes a claim to funds held in another's bank account, the bank faces an impossible dilemma: (a) recognize the claim and freeze its customer's funds, potentially subjecting itself to liability to its own customer for wrongful dishonor; or (b) take no action and expose itself to a lawsuit from the third-party claimant alleging the bank was on notice of fraud and should have frozen the funds. The Adverse Claims Statute resolves this dilemma by providing that banks have no obligation to recognize an adverse claim to funds on deposit in a customer's account without a court order or indemnifying bond. *See Hudson v. Valcorp, Inc.*, No. CIV. A. 88-2383, 1990 WL 69173, at *2 (D.N.J. May 22, 1990) (dismissing claims against

12

defendant bank for releasing funds to its account holder as inconsistent with New Jersey's Adverse Claims Statute). In *Hudson*, the court recognized that permitting claims against a bank that honored its customer's withdrawal rights—absent a court order or bond—would render the statute meaningless.

Plaintiff's failure to comply with N.J.S.A. § 17:9A-223 is fatal to his claims. Allowing Plaintiff to assert common law claims against BANA when Plaintiff has failed to comply with the Adverse Claims Statute would essentially render the statute meaningless and would impose on BANA precisely the dilemma the Legislature intended to eliminate. BANA had no legal obligation to freeze, return, or otherwise restrict its customers' access to their deposited funds based solely on Plaintiff's unsubstantiated claim of an interest in those funds.

Because Plaintiff's claims seek to impose liability on BANA for failing to recognize an adverse claim without satisfying the statutory requirements, those claims are inconsistent with N.J.S.A. § 17:9A-223 and must be dismissed.

## IV.    Plaintiff Fails to State a Claim for Conversion.

"The common law tort of conversion is defined as the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 431 (App. Div. 2011) (internal quotation marks omitted). The elements of conversion are: (1) "the

property and right to immediate possession thereof belong to the plaintiff"; and (2) "the wrongful act of interference with that right by the defendant." *First Nat'l Bank v. North Jersey Tr. Co.*, 18 N.J. Misc. 449, 452 (1940). Plaintiff's conversion claim against BANA fails on both elements.

As a threshold matter, "there must first be an assessment of whether defendant has independent dominion and control over the subject property, as that inquiry affects other requirements for this tort." *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 305 (2020). "A defendant exercises 'independent dominion or control' where he uses property as his own." *OWAL, Inc. v. Caregility Corp.*, Civ. A. 3:21-cv-13407, 2022 WL 890182, at *9-10 (D.N.J. Mar. 25, 2022) (citing *Meisels*, 240 N.J. at 305-06).

New Jersey courts have consistently held that where an entity merely holds funds subject to the instructions of another—as a bank does with respect to its depositor—the entity does not exercise the independent dominion or control required for conversion. *See Merrick Bank Corp. v. Valley Nat'l Bank*, Civ. A. No. 13-7756, 2017 WL 5951583, at *14 (D.N.J. Nov. 30, 2017) ("an entity does not exercise dominion and control over an account which is subject to the instructions of another"); *see also Meisels*, 240 N.J. at 306-07 (holding that firm did not exercise dominion and control over funds in trust account by disbursing funds upon client's instructions without knowledge of competing claims).

14

In *DeFazio*, this Court dismissed a conversion claim against a beneficiary bank on precisely these grounds, holding that the "Complaint allege[d] no facts whatsoever regarding how Wells Fargo exercised control over Plaintiff's funds." *DeFazio*, 2020 WL 1888252, at *5. The same deficiency exists here.

Here, Plaintiff alleges only that BANA received and processed the proceeds of the wire transfers into accounts maintained or serviced by BANA. *See* Compl. ¶ 55. Plaintiff does not allege that BANA initiated or directed the transfers, used the funds for its own benefit, or exercised independent dominion or control over the funds as its own. *See generally* Compl.; *see also id.* ¶¶ 55, 64–67. Rather, Plaintiff's conversion theory rests on BANA's alleged acceptance and processing of the funds and alleged failure to freeze, recover, or return them after being placed on notice. *See id.* ¶¶ 64–67. That is not conversion.

If Plaintiff has a conversion claim against anyone, it is against the unknown third-party fraudsters who directed the unauthorized transfers—not against BANA, which merely maintained the deposit accounts into which the funds were routed. Because Plaintiff cannot establish that BANA exercised independent dominion or control over his funds, his conversion claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons, BANA requests that the Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety with prejudice pursuant to Fed. R. Civ.

P. 12(b)(6), and grant such other and further relief as the Court deems just and proper.

Dated:   July 14, 2026              Respectfully submitted,
         New York, New York

                                    /s/ Philip A. Goldstein
                                    Philip A. Goldstein
                                    Shan P. Massand
                                    MCGUIREWOODS LLP
                                    1251 Avenue of the Americas, 20th Floor
                                    New York, New York 10020-1104
                                    Phone: (212) 548-2100
                                    pagoldstein@mcguirewoods.com
                                    smassand@mcguirewoods.com

                                    *Attorneys for Defendant Bank of
                                    America, N.A.*

16