1 Case No. 2:26-cv-06421-WJM-CF

**ROBERT S. MACTAVISH (admitted pro hac vice)**
**LENTO LAW GROUP, P.C.**
**1814 Route 70 East, Suite 323**
**Cherry Hill, New Jersey 08003**
**Telephone: (856) 652-2000**
**Email: robert.mactavish@llgnational.com**
**LAWRENCE ALAN KATZ, Local Counsel**
**LLG NATIONAL NJ PC**
**Attorneys for Plaintiff Premnath Karre**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PREMNATH KARRE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**E*TRADE SECURITIES LLC; MORGAN STANLEY; BANK OF AMERICA, N.A.; JOHN DOES 1–10; and ABC BUSINESS ENTITIES 1–10,**<br><br>**Defendants.** | **Case No. 2:26-cv-06421-WJM-CF**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE OPPOSITION OUT OF TIME AND OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS**<br><br>**Underlying Motion Date: August 17, 2026** |

Plaintiff Premnath Karre ("Plaintiff"), by and through undersigned counsel, respectfully moves under Federal Rule of Civil Procedure 6(b)(1)(B) for leave to file the accompanying opposition out of time and opposes Defendant Bank of America, N.A.'s ("BANA") motion to dismiss. For the reasons below, leave should be granted and the motion to dismiss should be denied. At minimum, any dismissal should be without prejudice and with leave to amend.

**MOTION FOR LEAVE TO FILE OPPOSITION OUT OF TIME**

BANA filed its motion to dismiss on July 14, 2026. ECF No. 16. The Clerk set the motion for August 17, 2026. Under Local Civil Rule 7.1(d)(2), Plaintiff's opposition was due fourteen days before the motion date, on August 3, 2026. Plaintiff respectfully requests leave to file the accompanying opposition after that deadline.

Rule 6(b)(1)(B) permits the Court, for good cause, to extend a deadline after it has expired where the failure to act resulted from excusable neglect. The inquiry is equitable and considers "all relevant circumstances," including prejudice to the opposing party, length of delay and effect on the proceedings, reason for the delay and whether it was within the movant's reasonable control, and good faith. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993); *Drippe v. Tobelinski*, 604 F.3d 778, 784–85 (3d Cir. 2010). No single factor is dispositive. *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322–24 (3d Cir. 2012).

The factors favor relief. The delay is brief; the underlying motion remains pending and has not been decided; and consideration of the opposition will not disrupt a trial date, discovery deadline, or other case-management event. BANA will suffer no cognizable prejudice from having its dismissal arguments resolved on a complete adversarial record. Plaintiff seeks relief promptly and in good faith upon recognizing the missed deadline.

In the period leading up to the response deadline, the firm experienced unexpected internal staffing losses that required active matters and calendaring responsibilities to be redistributed. During that restructuring, responsibility for this matter was reassigned, but the August 3 response deadline was not transferred into the reassigned matter workflow and was inadvertently overlooked. The omission came to counsel's attention on August 14, 2026, during a review of pending matters. Counsel immediately prioritized

the response and undertook preparation of the opposition and this request for leave. This was an isolated administrative oversight during a staffing transition, not a tactical decision or a disregard of the Court's rules.

Any inconvenience to BANA can be addressed by allowing a reply measured from the date the opposition is accepted. By contrast, denying leave would expose Plaintiff to dismissal without consideration of his response based on a short procedural delay. The strong preference for resolving disputes on their merits favors accepting the opposition. Plaintiff therefore respectfully requests that the Court grant leave, deem the accompanying opposition filed, and permit BANA to reply within the time prescribed by the Local Rules or such time as the Court directs.

## PRELIMINARY STATEMENT

BANA's motion asks the Court to decide a fact-dependent dispute as though the Complaint alleged nothing beyond the mechanical receipt of two completed wire transfers. It does. Plaintiff alleges that two unauthorized transfers totaling $123,510 were sent within seconds from his E*TRADE account to accounts maintained or serviced by BANA; that the transfers displayed red flags arising from their origin, amount, timing, and recipient accounts; that BANA knew or should have known it was facilitating receipt and movement of stolen funds; that BANA was placed on notice of the fraud directly or through E*TRADE; and that BANA nevertheless failed to freeze, reverse, or preserve funds that could have been recovered. Compl. ¶¶ 15–28, 55–60, 63–67. Those allegations must be accepted as true, and the reasonable inferences must be drawn for Plaintiff, not for BANA.

The motion also assumes, without conducting New Jersey's choice-of-law analysis, that New Jersey substantive law governs every issue. That omission matters. Plaintiff is

a Georgia resident; the injury and loss were sustained in Georgia; the Complaint expressly pleads conversion under Georgia law; BANA is headquartered in North Carolina; and the Complaint does not identify the state in which the beneficiary accounts were maintained. Georgia law recognizes conversion of specific and identifiable funds transferred electronically. *Trey Inman & Associates, P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 458–59, 702 S.E.2d 711, 717 (2010). Separately, the Eleventh Circuit has held that Article 4A does not displace a compatible state-law claim based on a beneficiary bank's acceptance of funds it knew or should have known were fraudulently obtained. *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–76 (11th Cir. 2003). The Court should not select New Jersey law, or decide the scope of displacement, by assumption.

Finally, BANA controls the critical information: the beneficiary-account identities and locations, the payment-order data, whether the beneficiary name matched the account name, when a recall or fraud notice reached BANA, what funds remained at that time, and what BANA did next. Rule 8 permits allegations on information and belief where those facts are peculiarly within the defendant's possession. The Court should permit those allegations to be tested through discovery. If the Court concludes that the present Complaint requires more specificity or a statutory Article 4A theory, the proper remedy is leave to amend, not dismissal with prejudice.

## FACTUAL BACKGROUND

Plaintiff maintained an E*TRADE brokerage account for years. Compl. ¶ 14. On December 26, 2024, he attempted to access the account on his laptop, but the account crashed. Id. ¶ 15. When he accessed the account by phone, he discovered two unauthorized outgoing wires, $98,580 and $24,930, executed within seconds. Id. ¶¶ 16–

5 Case No. 2:26-cv-06421-WJM-CF

20. E*TRADE sent an authorization prompt for the second transfer, but completed the transfer before Plaintiff could respond; it sent no alert for the first transfer. Id. ¶¶ 19–20.

Plaintiff immediately reported the fraud to E*TRADE and locked the account. Id. ¶ 21. He filed a police report the next day. Id. ¶ 22. E*TRADE later refunded $23,501.52, leaving $100,008.48 unrecovered. Id. ¶ 24. E*TRADE and/or Morgan Stanley informed Plaintiff that the fraudulent wires were routed through BANA accounts in the United States. Id. ¶ 27.

As to BANA, the Complaint alleges that it received and processed the proceeds into accounts it maintained or serviced. Id. ¶ 55. It further alleges that the transfers presented red flags, including their origin, size, timing, and the nature of the recipient accounts, and that BANA either knew or should have known it was facilitating receipt and movement of stolen funds. Id. ¶¶ 56–57. Plaintiff alleges that BANA was placed on notice, directly or through E*TRADE, yet failed to take appropriate remedial action while it had the capacity to freeze or reverse the funds. Id. ¶ 58. Plaintiff also alleges that BANA accepted, transferred, or retained the stolen funds and refused to return them after notice and demand. Id. ¶¶ 64–67.

## LEGAL STANDARD

To survive Rule 12(b)(6), a complaint need only contain enough factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the Complaint in Plaintiff's favor and draw all reasonable inferences in his favor. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court may not resolve factual disputes, weigh evidence, or adopt a defendant's competing account of events. See *Phillips v. County of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008). Allegations may be made on information and belief when the

pertinent facts are peculiarly within the defendant's knowledge or control. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). And unless amendment would be inequitable or futile, leave to amend should be granted. *Phillips*, 515 F.3d at 245.

**ARGUMENT**

**I. BANA HAS NOT ESTABLISHED THAT NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS.**

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). New Jersey first asks whether the competing laws present an actual, outcome-determinative conflict. *Davis v. BMW of North America, LLC*, 810 F. Supp. 3d 528, 539–42 (D.N.J. 2025); *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008). If they do, New Jersey applies the Restatement's "most significant relationship" test. *Maniscalco v. Brother International (USA) Corp.*, 709 F.3d 202, 206–07 (3d Cir. 2013). For tort claims, the analysis is issue-specific and considers the place of injury, the place of the conduct causing injury, the parties' domiciles and places of business, and the place where any relationship is centered, with those contacts evaluated according to their relevance to the particular issue. *P.V.*, 197 N.J. at 143–45, 962 A.2d at 460–61.

BANA performs none of that analysis. It simply applies New Jersey law. The Complaint, however, alleges that Plaintiff resides in Georgia, sustained the financial loss there, and asserts conversion under Georgia law. Compl. ¶¶ 5, 24, 68. BANA is headquartered in North Carolina. Id. ¶ 8. The pleading does not identify where the beneficiary accounts were maintained, where BANA processed the payment orders, or where BANA received and acted on the fraud notice. Those facts matter because New

7 Case No. 2:26-cv-06421-WJM-CF

Jersey's test does not mechanically select forum law. See *Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 283–84 (D.N.J. 2014) (separately analyzing the contacts associated with contract, negligence, fraud, and consumer-fraud claims and applying different states' laws to different claims).

The competing authorities also demonstrate a potentially outcome-determinative difference. New Jersey decisions displace common-law claims when their factual predicates fall directly within Article 4A's loss-allocation rules. *ADS Associates Group, Inc. v. Oritani Savings Bank*, 219 N.J. 496, 517–20, 99 A.3d 345, 357–59 (2014). By contrast, *Regions Bank* held that Article 4A is silent as to a beneficiary bank's acceptance of funds it knew or should have known were fraudulently obtained and therefore did not displace compatible state-law remedies addressing that conduct. 345 F.3d at 1274–76. Georgia law also treats specific, identifiable electronically transferred funds as property capable of conversion. *Trey Inman*, 306 Ga. App. at 458–59, 702 S.E.2d at 717. Because the choice may affect both displacement and the conversion elements, the Court should conduct the required analysis rather than presume New Jersey law applies.

## II. ARTICLE 4A DOES NOT CATEGORICALLY DISPLACE EVERY CLAIM CONNECTED TO A WIRE TRANSFER.

BANA's displacement argument is overbroad. Article 4A's Official Comment states that it provides the exclusive rules only for a "situation covered by particular provisions" of the Article and bars outside law only when it would create rights or liabilities "inconsistent with" those provisions. N.J. Stat. Ann. § 12A:4A-102 cmt. 1. *ADS* applies that text: the question is not whether a wire appears somewhere in the factual narrative, but whether the specific challenged conduct is directly addressed by Article 4A and

8 Case No. 2:26-cv-06421-WJM-CF

whether the common-law rule would disturb Article 4A's allocation. 219 N.J. at 517–20, 99 A.3d at 357–59.

The Complaint is not limited to an allegation that BANA mechanically credited the account number identified in a payment order. It alleges that BANA knew or should have known the transfers involved stolen funds; that the transactions and recipient accounts presented red flags; that BANA received notice of the fraud; and that BANA thereafter permitted dissipation rather than preserving funds it could still control. Compl. ¶¶ 56–60, 64–67. Article 4A does not expressly grant a beneficiary bank immunity for post-notice assistance in dissipating stolen funds, nor does it address every duty arising from a bank's independent knowledge of fraud.

*Regions Bank* illustrates the distinction. There, a beneficiary bank received fraudulent wire proceeds and applied part of them to its customer's debt. 345 F.3d at 1269–73. The Eleventh Circuit held that Article 4A did not displace state-law claims insofar as they rested on the bank's knowledge, or reason to know, that the funds were fraudulently obtained because Article 4A did not allocate liability for that independent misconduct. Id. at 1274–76. The court ultimately affirmed summary judgment because the evidence did not establish the required knowledge or bad faith. Id. at 1276–81. That merits disposition after a developed record does not support resolving the disputed knowledge and notice allegations against Plaintiff at the pleading stage.

BANA's authorities do not establish categorical displacement. *ADS* involved a bank customer's effort to recover for transfers among its own accounts based on duties that conflicted with Article 4A's authorization and security-procedure provisions. 219 N.J. at 502–09, 517–20, 99 A.3d at 348–52, 357–59. *Harborview Capital Partners, LLC v. Cross River Bank* similarly arose from a customer's allegations that its bank failed to

follow agreed security and verification procedures for outgoing wires, conduct governed by N.J. Stat. Ann. § 12A:4A-202 through -204. 600 F. Supp. 3d 485, 491–97 (D.N.J. 2022). And *Drosos & Associates, P.C. v. TD Bank, N.A.* displaced conversion and fiduciary-duty claims that repackaged a customer bank's alleged mishandling of account transfers and would have circumvented Article 4A's limitation periods. No. 23-1275, 2024 WL 863319, at *3–4 (D.N.J. Feb. 29, 2024). Those cases enforce Article 4A where a particular provision supplies the governing rule. They do not hold that Article 4A extinguishes every claim involving a wire, regardless of the defendant's independent knowledge or post-acceptance conduct.

*DeFazio v. Wells Fargo Bank, N.A.*, No. 20-375 (SRC), 2020 WL 1888252, at *1–3 (D.N.J. Apr. 16, 2020), dismissed negligence and conversion claims where the complaint alleged only that the beneficiary bank accepted unauthorized wires and refused to return them. Plaintiff alleges more, including transaction-specific red flags, actual or constructive knowledge, notice transmitted directly or through E*TRADE, an opportunity to preserve the proceeds, and continued dissipation after notice. Compl. ¶¶ 56–60, 64–67. Whether those allegations ultimately establish liability is separate from whether every alleged act is governed by a particular Article 4A provision. At minimum, the Court should not dismiss with prejudice before the payment orders, account-opening facts, notice history, and disposition of the proceeds are known.

## III. THE NEGLIGENCE CLAIM SHOULD NOT BE DISMISSED BEFORE GOVERNING LAW AND BANA'S KNOWLEDGE ARE DETERMINED.

BANA correctly states the general New Jersey rule that a bank ordinarily owes no duty to a noncustomer absent a special relationship. See *City Check Cashing, Inc. v. Manufacturers Hanover Trust Co.*, 166 N.J. 49, 59–62, 764 A.2d 411, 417–19 (2001). But

the existence and scope of a duty depend on the governing law and the alleged conduct. BANA cannot invoke a New Jersey no-duty rule before showing that New Jersey law governs.

The present allegations do not rest solely on a generalized duty to protect every noncustomer from account fraud. Plaintiff alleges transaction-specific red flags, suspicious recipient accounts, notice of the fraud, and a resulting opportunity to prevent further dissipation. Compl. ¶¶ 56–59. *Regions Bank* recognizes that Article 4A does not itself foreclose a compatible claim addressing a beneficiary bank's receipt of funds with knowledge, or reason to know, that the funds were fraudulently obtained. 345 F.3d at 1274–76. The governing law and the facts supporting knowledge therefore matter to the duty analysis.

Whether BANA actually possessed the alleged knowledge is a factual question. The relevant information, including account-opening records, prior fraud complaints, transaction monitoring, the payment-order fields, internal alerts, recall communications, and the timing of withdrawals, is held by BANA and the other financial-institution defendants. Rule 8 does not require Plaintiff to plead BANA's confidential internal records before discovery. *Lincoln Benefit*, 800 F.3d at 107 n.31. It requires a plausible factual theory, which the Complaint provides.

BANA also improperly converts the allegation that it was notified "directly or through E*TRADE" into an assertion that BANA lacked notice until nothing could be done. Mot. 3, 15; Compl. ¶ 58. The Complaint does not establish that defense. It alleges that BANA had an opportunity and capacity to freeze or reverse funds and that its inaction facilitated dissipation. Compl. ¶¶ 58–59. The timing and content of notice,

remaining balances, and subsequent disbursements cannot be resolved on a Rule 12(b)(6) motion.

*Remtek Services, Inc. v. Wells Fargo Bank, N.A.* confirms that the theory matters. The court held that Article 4A displaced a negligence claim based on processing a misdescribed payment order, but it separately recognized that negligence in opening the recipient account may fall outside Article 4A and dismissed that theory without prejudice only because the complaint did not explain how the account-opening conduct was negligent. No. 19-12790, 2020 WL 241332, at *3–4 (D.N.J. Jan. 16, 2020). Here, the Complaint identifies the recipient accounts and transaction characteristics as sources of red flags. Compl. ¶¶ 56–57. If greater detail is required, *Remtek* supports amendment directed to the account-opening and monitoring facts within BANA's control, not dismissal with prejudice.

## IV. THE ADVERSE-CLAIMS STATUTE DOES NOT WARRANT DISMISSAL.

N.J. Stat. Ann. § 17:9A-223 cannot support dismissal for three independent reasons. First, BANA has not shown that New Jersey law governs or that the recipient deposits were maintained in New Jersey. The Complaint alleges only that the wires reached BANA accounts "within the United States." Compl. ¶ 27. The statute should not be applied extraterritorially to unidentified accounts based solely on BANA's general New Jersey operations.

Second, the statute addresses when notice of an adverse claim requires a banking institution to "recognize the adverse claimant" to its customer's deposit absent an injunction or indemnity bond. N.J. Stat. Ann. § 17:9A-223. Plaintiff's theory is not limited to an unsupported demand that BANA adjudicate ownership between two apparently legitimate claimants. Plaintiff alleges an unauthorized transfer, notice of fraud

12


transmitted through the originating institution, and BANA's own knowledge or constructive knowledge of indicia of criminal conduct. Compl. ¶¶ 55–59. BANA cites no controlling decision holding that § 17:9A-223 supplies immunity for a bank's own allegedly tortious conduct before an adverse claim was made, or bars claims based on the bank's knowledge of fraud independent of the claimant's notice.

Third, *Hudson v. Valcorp, Inc.* was decided on summary judgment after an evidentiary record established that the claimant wired $500,000 into an account owned solely by the bank's customer, never obtained judicial process or supplied an indemnity bond, and sought to hold the bank liable for releasing that deposit to the record owner. No. 88-2383, 1990 WL 69173, at *1–4 (D.N.J. May 22, 1990). Here, the location and ownership of the recipient accounts, the content and timing of any interbank fraud notice or recall, the balance remaining when notice arrived, and BANA's ensuing acts are unknown. Section 17:9A-223 may govern a bare demand to recognize an adverse claimant, but *Hudson* does not resolve at the pleading stage whether BANA committed actionable conduct independent of such a demand.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED CONVERSION UNDER THE LAW PLEADED IN THE COMPLAINT, OR SHOULD RECEIVE LEAVE TO REPLEAD.

The Complaint expressly alleges conversion under Georgia law. Compl. ¶ 68. Under Georgia law, wire-transfer proceeds can constitute specific and identifiable property capable of conversion. *Trey Inman & Associates, P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 458, 702 S.E.2d 711, 717 (2010). Plaintiff identifies two exact transfers, made on a specific date, in the amounts of $98,580 and $24,930, and alleges an unrecovered balance of $100,008.48. Compl. ¶¶ 16–18, 24, 63–69. That is not an unsegregated claim for a general debt.

The Complaint also alleges possession and dominion beyond passive bookkeeping. It alleges that BANA accepted and transferred the stolen funds, retained or allowed retention after notice, had the capacity to freeze or reverse them, and refused to return them after demand. Id. ¶¶ 58, 64–67. Whether BANA used the funds for its own benefit, set them off, earned fees, or merely followed its customer's instructions is not established by the Complaint. BANA's contrary assertion is a factual defense.

*Meisels v. Fox Rothschild LLP* does not compel dismissal. There, after discovery and on summary judgment, the New Jersey Supreme Court held that a law firm did not exercise independent dominion by disbursing trust funds as its client directed where the wire contained no limiting instruction, the firm had no knowledge of the plaintiff or any competing claim, and no demand was made until five years after the transaction. 240 N.J. 286, 293–95, 303–08, 222 A.3d 649, 654–55, 659–62 (2020). The court explained that a timely demand can transform initially lawful possession by notifying the holder of a competing claim and requiring further inquiry. Id. at 305–08, 222 A.3d at 661–62. Plaintiff alleges the opposite factual posture: notice and demand while BANA still had the capacity to freeze or reverse identifiable proceeds, followed by refusal and further dissipation. Compl. ¶¶ 58–59, 64–67. Those allegations must be accepted at this stage.

If the Court determines that New Jersey law governs and that the existing conversion allegations do not sufficiently distinguish BANA's own dominion from its customer's instructions, dismissal should be without prejudice. Plaintiff can amend after obtaining or alleging additional available facts concerning BANA's receipt, retention, setoff, fees, notice, and post-notice disposition of the identifiable proceeds. Rule 15's liberal standard, not dismissal with prejudice, governs that request.

**VI. DISMISSAL WITH PREJUDICE WOULD BE IMPROPER.**

Even if the Court finds a pleading deficiency, BANA offers no basis to conclude amendment would necessarily be futile. N.J. Stat. Ann. § 12A:4A-207(2) permits a beneficiary bank to rely on the account number when it does not know that the beneficiary name and number identify different persons, but provides a different rule when the bank has actual knowledge of the mismatch. Amendment could plead an Article 4A theory if the payment orders and beneficiary-account records show a name-number mismatch and knowledge attributable to BANA. See N.J. Stat. Ann. § 12A:4A-207(2)(a)–(b) & cmt. 2. Amendment could also clarify the account-opening facts, precise notice and recall timeline, location of the beneficiary accounts, funds remaining after notice, BANA's post-notice acts, and any restitutionary claim available under the governing law.

The Third Circuit instructs that a plaintiff whose complaint is vulnerable under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. District courts applying that rule ordinarily provide an opportunity to amend even when the plaintiff has not yet supplied a proposed pleading. See *Bessemer System Federal Credit Union v. Fiserv Solutions, LLC*, 472 F. Supp. 3d 142, 154 (W.D. Pa. 2020) (citing *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002)). This is the first motion directed to Plaintiff's pleading, the operative facts are largely within the financial institutions' control, and no discovery has established that the missing details cannot support relief. Thus, any dismissal should be without prejudice and accompanied by leave to amend.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny BANA's motion to dismiss. Alternatively, Plaintiff requests that any dismissal be without prejudice and that Plaintiff be granted leave to file an amended complaint.

Dated: August ___, 2026

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiff (admitted pro hac vice)*

s/ Lawrence A. Katz, Esq.
LAWRENCE A. KATZ
Local Counsel for Plaintiff