**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PREMNATH KARRE,**<br><br>Plaintiff,<br><br>**v.**<br><br>**E*TRADE SECURITIES LLC; MORGAN STANLEY; BANK OF AMERICA, N.A.; JOHN DOES 1-10 (fictitious entities); and ABC BUSINESS ENTITIES 1-10 (fictitious entities),**<br><br>Defendants. | No. 2:26-cv-06421-WJM-CF<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss Plaintiff's Complaint. ECF No. 16 ("BANA's Motion to Dismiss" or "Motion"). BANA's Motion moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This Court declines to hold oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, BANA's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Premnath Karre maintained a brokerage account with Defendant ETrade Securities LLC ("ETrade") for several years. ECF No. 1 ("Complaint" or "Compl."), at ¶¶ 5, 14. When Plaintiff accessed his brokerage account on December 26, 2024, he discovered two unauthorized wire transactions for $98,580.00 ("Transaction 1") and $24,930.00 ("Transaction 2"), totaling $123,510.00. *Id.* ¶¶ 15-18. Plaintiff received no alert regarding Transaction 1, and despite receiving a text message from ETrade regarding Transaction 2, Transaction 2 was completed without authorization before Plaintiff could reply. *Id.* ¶¶ 19-20. Plaintiff immediately reported the incident to ETrade and locked his brokerage account. *Id.* ¶ 21. On December 27, 2024, Plaintiff filed a police report for the stolen value

[1] The two counts in the Complaint against BANA are Count IV (Negligence) and Count V (Conversion). This Opinion will address these counts as they pertain to BANA.

of $123,510.00, listing the incident as one involving identity fraud and unlawful execution of checks and drafts. *Id.* ¶ 22.

Although Plaintiff continued to regularly contact ETrade, he was unable to reach the investigators handling the incident and received only limited information from ETrade's customer service representatives. Compl. ¶ 23. On January 15, 2025, Plaintiff was refunded $23,501.52 of the total balance. *Id.* ¶ 24. Plaintiff has yet to receive a written explanation from ETrade as to why he has not been refunded the remaining balance of $100,008.48. *Id.* ¶ 24-25. ETrade and/or Morgan Stanley ("MS") informed Plaintiff that the wire transfers were routed through Bank of America accounts within the United States. *Id.* ¶ 27. However, neither ETrade nor BANA has provided Plaintiff with information regarding the recipient accounts or has recovered Plaintiff's funds. *Id.* ¶ 28.

Plaintiff filed suit in federal court, bringing claims for negligence against ETrade and MS (Count I); breach of contract against ETrade (Count II); violation of the New Jersey Consumer Fraud Act against ETrade and MS (Count III); negligence against BANA (Count IV); and conversion against all Defendants (Count V). Compl. ¶¶ 29-70.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Courts may disregard legal conclusions, conclusory statements, and "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is not required to include detailed factual allegations to avoid dismissal under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when its pleaded facts allow courts "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts should draw on their "judicial experience and common sense" when making a plausibility determination. *Id.* at 679.

## III. DISCUSSION

### A. Choice-of-Law

A federal court sitting in diversity "applies the choice-of-law rules of the forum state . . . to determine the controlling law." *Davis v. BMW of N. Am., LLC*, 810 F. Supp. 3d 528, 539 (D.N.J. 2025) (quoting *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013)). In New Jersey, a choice-of-law inquiry begins by determining whether an

actual conflict exists between the laws of the potential forums. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). If no actual conflict exists, the inquiry ends, and the court will apply the law of the forum state. *Gu v. Wang*, No. 24-cv-4348, 2025 WL 660625, at *9 (D.N.J. Feb. 28, 2025). However, if there is an actual conflict, New Jersey applies the "most substantial relationship" test. *Id.* This assessment "takes place on an issue-by-issue basis." *Camp Jaycee*, 197 N.J. at 143.

Here, Plaintiff is a citizen of Georgia and alleges that he sustained his financial loss in Georgia. Compl. ¶ 5. BANA is headquartered in North Carolina and maintains the "accounts used in the processing of wire transfers such as those at issue in this case" in New Jersey. Compl. ¶ 8. Plaintiff argues that BANA has not established that New Jersey law governs Plaintiff's claims. However, while the parties disagree on the applicable law, they both appear to agree that the two relevant forums are New Jersey and Georgia. Therefore, Plaintiff's claims will be analyzed under both New Jersey law and Georgia law to determine if an actual, outcome-determinative conflict exists.

**B. Negligence (Count IV)**

BANA raises three grounds for dismissal of Plaintiff's negligence claim: (1) Plaintiff's common law claims are preempted by Article 4A of the Uniform Commercial Code ("UCC"), adopted in New Jersey as N.J.S.A. § 12A:4A-101, *et seq.*, (2) Plaintiff fails to state a negligence claim because BANA owed no duty to a non-customer, and (3) Plaintiff's claims are inconsistent with New Jersey's Adverse Claims Statute, N.J.S.A. § 17:9A-223.[2]

1. *Article 4A of the UCC*

Funds transfers, which includes wire transfers, are "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." N.J.S.A. § 12A:4A-104(1). In New Jersey, Article 4A of the UCC ("Article 4A") provides a comprehensive framework that "governs the rights and remedies of parties affected by funds transfers." *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 219 N.J. 496, 518-19 (2014); N.J.S.A. § 12A:4A-101, *et seq*. Article 4A preempts common law claims that "contravene" its provisions. *ADS*, 219 N.J. at 525 (holding that the plaintiff cannot assert a negligence claim against the defendant-bank because the plaintiff was not a bank customer under Article 4A and a common law negligence claim would have contravened Article 4A's objectives); *see also Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 496 (D.N.J. 2022). Inversely, Article 4A does not displace claims that do not frustrate its purposes. *See, e.g.*, *DeFazio v. Wells Fargo Bank, N.A.*, No. 20-cv-375, 2020 WL 1888252, at *4 (D.N.J. Apr. 16, 2020) (noting that Article 4A did not bar the aspect of plaintiff's negligence claim involving the bank's lack

[2] This Court need not address BANA's N.J.S.A § 17:9A-223 argument because BANA's Motion is granted on alternative grounds.

of care in the management and maintenance of accounts); *Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*, No. 19-cv-12790, 2020 WL 241332, at *4 (D.N.J. Jan. 16, 2020) (noting that Article 4A may not preempt a claim asserting that the bank was "negligent in allowing the fraudsters to open an account in the first place"). Overall, in New Jersey, Article 4A generally preempts common law claims when a wire transfer forms the "nucleus" of those claims. *Harborview*, 600 F. Supp. 3d at 497.

In Georgia, like in New Jersey, Article 4A of the UCC governs funds transfers and preempts common law claims that contravene its provisions. O.C.G.A. § 11-4A-101, *et seq.*; *Zeal Glob. Servs. Priv. Ltd. v. Suntrust Bank*, 508 F. Supp. 3d 1303, 1311-13 (N.D. Ga. 2020) (finding that Article 4A directly governs a harm that "arises out of and flows through" fraudulent wire transfers). Inversely, Article 4A under Georgia law does not displace common law claims that do not frustrate the purposes of the statute. *See Zeal*, 508 F. Supp. 3d at 1311 (explaining that the improper opening of accounts in plaintiffs' names is a situation not directly governed by a UCC provision because the direct harm does not flow from wire transfers). Plaintiff argues that there is an actual conflict between New Jersey law and Georgia law because Georgia law would present a different outcome when applying the holding in *Regions Bank v. Provident Bank, Inc. Regions Bank*, 345 F.3d 1267, 1279 (11th Cir. 2003) (holding "Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally"). However, this argument fails for two primary reasons. First, as BANA correctly points out, *Regions Bank* is 11th Circuit authority that is not binding on this Court. *Id.* at 1267. Second, district courts in the 11th Circuit have applied *Regions Bank*'s holding unevenly. *Contrast Zeal*, 508 F. Supp. 3d at 1312 (distinguishing *Regions Bank* from *Zeal*'s set of facts by finding that *Regions Bank* presented a situation in which the defendant-bank was directly paid by the wire transfers and "used the fraudulent funds to pay a debt owed to it by the beneficiary"), *with GSR Mkts. Ltd. v. McDonald*, 593 F. Supp. 3d 1208, 1226 (N.D. Ga. 2022) (explaining that "[t]o interpret Article 4A in a manner to protect banks that receive and retain funds they know or should know are fraudulently obtained, would provide a shield against liability for fraudulent activity").

Therefore, because there is no actual conflict between New Jersey law and Georgia law regarding this issue, New Jersey's choice-of-law inquiry ends, and New Jersey law applies. *Gu v. Wang*, 2025 WL 660625, at *9. Under New Jersey law, the two wire transfers totaling $123,510.00 form the nucleus of Plaintiff's negligence claim, and Plaintiff does not plead sufficient facts to show his common law negligence claim is not otherwise preempted by Article 4A. *Harborview*, 600 F. Supp. 3d at 497; Compl. ¶ 16. Therefore, Plaintiff has failed to sufficiently state a negligence claim that would not be preempted by Article 4A of the UCC.

2. *Duty of Care to Non-Customers*

This Court will analyze whether BANA owed a duty of care to Plaintiff regardless of Article 4A preemption of Plaintiff's negligence claim. Under New Jersey law, a

negligence cause of action requires a plaintiff to establish: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (citing *Polzo v. Cnty. Of Essex*, 196 N.J. 569, 584 (2008)). In New Jersey, a bank does not ordinarily owe a duty of care to a non-customer, absent a special relationship. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 400 (2009); *Armenian Missionary Ass'n of Am., Inc. v. TD Bank, N.A.*, No. 15-cv-03328, 2015 WL 5310765, at *4 (D.N.J. Sep. 11, 2015). A special relationship may arise by "agreement, undertaking, or contract." *City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co.*, 166 N.J. 49, 62 (2001).

Under Georgia law, a negligence claim requires a plaintiff to establish (1) duty, (2) breach of duty, (3) proximate cause, and (4) actual damages. *Amick v. BM & KM, Inc.*, 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003). Banks do not owe a duty of care to non-customers who allege common law tort claims under Georgia law. *Zeal*, 508 F. Supp. 3d at 1316-17; *Wright v. Jjsautosga, Inc.*, No. 2019CV323321, 2020 Ga. Super. LEXIS 2264, at *12-13 (Ga. Super. Ct. Aug. 3, 2020) (citing *Midwest Feeders, Inc. v. Regions Bank (Inc.)*, No. 15-CV-00013, 2016 WL 5796894, *6 (M.D. Ga. Sep. 30, 2016)). Because no actual conflict exists between New Jersey law and Georgia law when it comes to determining if a bank has a duty of care to non-customers, New Jersey law applies. *Gu v. Wang*, 2025 WL 660625, at *9.

Here, Plaintiff neither alleges that he is a customer of BANA nor alleges any special relationship with BANA by agreement, undertaking, or contract. Plaintiff argues that his allegations do not rest solely on a general duty of care because he alleges that there were also "transaction-specific red flags, suspicious recipient accounts, notice of the fraud, and a resulting opportunity to prevent further dissipation." ECF No. 18 ("Plaintiff's Opposition"), at 10. However, it is unclear why Plaintiff believes such allegations are sufficient to establish a duty of care owed by BANA. Even if Article 4A does not preempt Plaintiff's negligence claim, Plaintiff has not alleged sufficient facts to show that BANA owed a duty of care to Plaintiff. Overall, because this Complaint lacks sufficient factual matter to properly plead a negligence claim, Count IV is **dismissed**.

### C. Conversion (Count V)

BANA raises three grounds for dismissal of Plaintiff's Georgia law conversion claim against BANA: (1) Plaintiff's common law claims are preempted by Article 4A of the UCC as adopted by New Jersey statute as N.J.S.A. § 12A:4A-101, *et seq.*, (2) Plaintiff fails to state a claim for conversion, and (3) Plaintiff's claims are inconsistent with New Jersey's Adverse Claims Statute, N.J.S.A. § 17:9A-223. As discussed above, Article 4A preempts common law claims that "contravene" its provisions, including conversion claims. *ADS*, 219 N.J. at 525. Because the two wire transfers form the nucleus of Plaintiff's common law claims, the Article 4A preemption analysis of Plaintiff's negligence claim applies in equal force to his conversion claim. *See Harborview*, 600 F. Supp. 3d at 497. Thus, this section will address whether Plaintiff fails to state a conversion claim regardless of Article 4A preemption.

In New Jersey, conversion is "the intentional exercise of dominion or control over chattel that 'so seriously interferes with the right of another to control' the chattel that the full value of the property must be paid." *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 297 (2020) (quoting Restatement (Second) of Torts § 222A(1) (1965)). To establish conversion, there must be a threshold assessment of "whether defendant [had] independent dominion and control over the subject property." *Id.* at 305. A bank generally does not exercise dominion and control over an account that is subject to the instructions of another. *Merrick Bank Corp. v. Valley Nat'l Bank*, No. 13-cv-7756, 2017 WL 5951583, at *14 (D.N.J. Nov. 30, 2017) (explaining that when the funds in an account are subject to the agreement between the bank and its customer, the bank does not have the authority to release funds to a third party without approval from its customer); *DeFazio*, 2020 WL 1888252, at *1-2, *6 (dismissing a conversion claim against the bank because plaintiff could not demonstrate the bank exercised dominion or control over his funds, where plaintiff wired funds to a fraudster's bank account and the bank acknowledged the receipt of the funds but took no action to freeze the account); *see also Meisels*, 240 N.J. at 306. In cases where a defendant lawfully acquired a plaintiff's property, the plaintiff must also show that the plaintiff "demanded the return of the property and that the defendant refused compliance." *Meisels*, 240 N.J. at 305.

In Georgia, conversion partly consists of "an act of dominion over the personal property of another inconsistent with his rights." *Trey Inman & Assocs., P.C. v. Bank of Am., N.A.*, 702 S.E.2d 711, 716 (Ga. Ct. App. 2010) (quoting *Maryland Cas. Ins. Co. v. Welchel*, 356 S.E.2d 877, 880 (Ga. 1987)). Under Georgia law, conversion has five elements; the two elements relevant to this analysis are the "exercise of wrongful dominion and control" and the "demand for return of property." *Peach State Bank & Tr. v. Wells Fargo Bank N.A. (Inc.)*, No. 18-CV-00126, 2019 WL 13224780, at *4 (N.D. Ga. June 20, 2019). When a bank in lawful possession of funds follows its customer's instructions, the bank generally does not exercise wrongful dominion and control. *See id.* Because no actual conflict exists between New Jersey law and Georgia law when it comes to this issue, New Jersey law applies. *Gu v. Wang*, 2025 WL 660625, at *9.

BANA argues that holding funds subject to the instructions of another is not enough to constitute independent dominion or control for purposes of conversion. Conversely, Plaintiff argues that "notice and demand while BANA still had the capacity to freeze or reverse identifiable proceeds, followed by refusal and further dissipation" can transform even an initially lawful possession into conversion under *Meisels*. Plaintiff's Opposition, at 13. As stated above, it is true that when a bank in lawful possession of funds follows its customer's instructions, the bank generally does not exercise dominion or control for purposes of conversion. *Merrick*, 2017 WL 5951583, at *14. However, a caveat to this is that a demand by a true owner of property may transform lawful possession into conversion if the demand is made under circumstances where the possessor of the property has the ability to comply and wrongfully refuses to do so. *Meisels*, 240 N.J. at 304-07. In this case, Plaintiff alleges that ETrade and/or MS informed Plaintiff that wire transfers were

routed through BANA accounts in the United States, but Plaintiff does not allege more than conclusory statements to support that Plaintiff made a clear demand of BANA, BANA had the ability to comply with that demand, and BANA refused that demand wrongfully. *Meisels*, 240 N.J. at 304-06; Compl. ¶ 27. Because of this, Plaintiff has not alleged sufficient facts to show that BANA's lawful possession transformed into wrongful dominion or control. *Meisels*, 240 N.J. at 304-06. Because Plaintiff fails to allege sufficient facts to plead a conversion claim against BANA, Count V is **dismissed as to BANA**.

### D. Leave to Amend

Plaintiff has stated in his Opposition that any dismissal should be without prejudice and accompanied by leave to amend. If Plaintiff wishes to amend his Complaint, this Court directs Plaintiff to formally move for leave to amend his Complaint in accordance with L. Civ. R. 15.1(a) and Fed. R. Civ. P. 15.

## IV. CONCLUSION

For these reasons, BANA's Motion is **GRANTED** with respect to Plaintiff's claims against BANA, specifically the negligence claim (Count IV) and the conversion claim (Count V). Plaintiff's claims against BANA are **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

**DATE:** 10/2/26

**WILLIAM J. MARTINI, U.S.D.J.**